IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

DAVID A. SIAS,

        Plaintiff,

V.                                                 CIVIL ACTION NO. 3:07-0792

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security which found him entitled to a period of disability starting July 1, 2004, based on his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on February 10, 2004, alleging disability commencing September 25, 2002, as a consequence of low back problems, post-traumatic stress disorder and asbestosis. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff disabled as of July 1, 2004, but not before, in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

During the period covered by the administrative decision, plaintiff was fifty-two to fifty-four years of age and had obtained a high school education. His past relevant employment experience

consisted of work as a sheet metal mechanic. In his decision, the administrative law judge found that plaintiff suffered from "degenerative joint disease, asbestosis, obesity, and post-traumatic stress disorder," impairments which he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that, from September 25, 2002 to July 1, 2004, he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.14 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

Review of the record reveals deficiencies which will require remand for further proceedings. The medical evidence reflects plaintiff suffered an injury to his lower back when he fell at work on September 18, 2002. An MRI taken January 11, 2003 was reportedly interpreted as showing degenerative disc desiccation at the L3-4, L4-5 and L5-S1 levels of the spine. Plaintiff was treated with physical therapy at Holzer Clinic from October 2002 through at least March 19, 2003. These records reflect that he generally reported having no or very little pain except when he engaged in heavier activity at home such as unloading clothes from the dryer, driving, trying to make beds or carrying boxes. Dr. Glen Imlay, who treated him during this period, reported on January 30, 2003 he was sending plaintiff back to work at light duty with some restrictions on postural activities such as bending, squatting, twisting and climbing.[3] On February 21, 2003, however, plaintiff reported that

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3.

[3] After reporting these restrictions, Dr. Imlay noted "otherwise, [plaintiff] would be able to stand, walk, sit and drive, and perform light duty-type activity." He also related he was going to increase plaintiff to medium duty at his next visit.

his employer did not have any work at the light level for him. It was decided to keep plaintiff on "sedentary duty" until Dr. Imlay received more information on his work conditioning program.

Plaintiff began work hardening on March 11, 2003, and Dr. Imlay's reports reflect continued improvement in the amount of weight he was able to lift. On June 30, 2003, he had completed work hardening and had made it up to the thirty to thirty-five pound range. On July 14, 2003, he reported that plaintiff had been through a functional capacity evaluation, and the recommendation was he be placed at medium level work. There were no abnormalities on exam this date, and Dr. Imlay noted plaintiff could go back to work at the level described in the functional capacity evaluation the following day. Even though it was noted this level of functioning was consistent with plaintiff's previous job, the case manager, who appeared to be helping to facilitate plaintiff getting back to work, indicated the previous job was not available at that time. As of September 15, 2003, the date of the most recent report from Dr. Imlay, plaintiff was no longer in therapy but was taking medication. Exam was normal except for iliolumbar ligament tenderness. Plaintiff refused injections offered and was instructed to continue exercises on his own.

Rodolfo Gobunsuy, M.D. examined plaintiff at the Commissioner's request on May 13, 2003 and reported he was comfortable with sitting and lying down; walked steadily; was neurologically intact and able to walk on heels, toes and heel-to-toe; could stand on one leg at a time; and was able to squat and arise without difficulty. The lumbar spine was tender at the L4-S1 levels, and range of motion was described as "slightly" affected. There were no symptoms suggestive of radiculopathy, and an x-ray of the lumbar spine was interpreted as showing "slight" osteoarthritic spurs at L4-5 and in the dorsal spine.

While plaintiff also alleged he had a cough, wheezing and became short of breath walking one-quarter mile, his lungs were clear, and pulmonary function testing was considered normal. Only "minimal COPD" was "suggested" by a chest x-ray performed October 3, 2003.

Plaintiff sought treatment from Candace Duty, DC, in late September 2003 for continuing back pain accompanied by radiation down the right leg to the toes. Examination revealed an antalgic gait, tenderness in the lumbosacral spine, limited range of motion and positive straight leg raising on the left and right. This evaluator believed that plaintiff had suffered aggravation of multi-level degenerative disc disease resulting in lumbar radiculopathy and had not reached a maximum degree of medical improvement. She recommended that he receive chiropractic treatment which she provided through at least May 24, 2004. Her reports document further limitation with the development of peripheral neuropathy affecting the left lower extremity. Exams reveal an antalgic gait pattern, decreased range of motion in the lumbar spine, tenderness in the lumbosacral muscles, occasional spasm in the thoracolumbar muscles, positive straight leg raising and normal strength and sensation. On April 26, 2004, plaintiff reported having weakness in both legs, with the right leg giving way at times. He also related having pins and needles sensation below the left knee. Ms. Duty detected right hamstring weakness on this date and abnormalities of the right foot when walking.

EMG and nerve conduction studies performed on April 22, 2004 were interpreted as showing right lumbar radiculopathy at L5-S1 as well as a mild sensory and motor peripheral polyneuropathy affecting the left posterior tibial nerve which, it was noted, was on the opposite side from plaintiff's

symptoms. Ms. Duty related she was going to send plaintiff to a neurologist for a consultation, but there is no indication this was done.[4]

Ms. Duty completed a "Residual Functional Capacity Evaluation" on May 4, 2004 in which she opined plaintiff could occasionally and frequently lift/carry less than ten pounds, stand and/or walk less than two hours, sit less than six hours, and needed to alternate sitting and standing. She felt pushing and pulling were limited in the lower extremities due to radiculopathy and peripheral polyneuropathy and that reaching would also be limited due a need not to overstretch lumbar paraspinal muscles. She also felt plaintiff could never climb and only occasionally balance, stoop, kneel, crouch or crawl. Approximately three weeks later, she completed a questionnaire relative to treatment and exam findings. At the end of the form was a "Medical Source Statement" where she expressed the opinion that plaintiff was "totally disabled." She stated he could not lift/carry over twenty-five pounds; could not sit or stand for greater than one hour continuously; and was unable to walk longer than thirty minutes without taking a break.

A state agency medical advisor reviewed the evidence and completed a residual functional capacity assessment, finding plaintiff could perform light level work but only occasionally climb, balance, stoop, kneel, crouch and crawl and must avoid concentrated exposure to extreme cold and heat, vibration, dust, fumes, etc. and hazards. Toward the end of the assessment, this physician makes note of the more recent restrictions expressed by Ms. Duty in her Medical Source Statement and then indicates his agreement with them. While it initially appears that the two opinions are

---

[4] Plaintiff did submit another report of EMG and nerve conduction studies dated June 2, 2005. The interpreting neurologist noted the finding of right L5-S1 radiculopathy as in the previous study, as well as "increased evidence for a sensory and motor peripheral polyneuropathy affecting axonal and myelin components."

conflicting, it is conceivable that Dr. Franyutti, the reviewing state agency physician, is agreeing that, while plaintiff could stand, walk or sit for up to six hours per work day, he could do so only in increments of thirty minutes for walking and one hour for sitting or standing. It obviously does not appear that he is in agreement that plaintiff is disabled.

The administrative law judge, in making his own findings as to residual functional capacity, addressed Ms. Duty's opinion only as it pertained to disability, finding it unsupported by the evidence. He did not discuss the rest of the opinion, nor did he mention Dr. Franyutti's assessment at all. In fact, he simply stated his residual functional capacity findings without providing any explanation as to what he relied upon in drawing his conclusions. Even without considering Dr. Franyutti's stated agreement with Ms. Duty's opinion, this physician's residual functional capacity assessment is more limited than that found by the administrative law judge; however, a review of the decision fails to indicate that the administrative law judge considered the conflict with his findings or was aware of the evaluator's stated agreement with Ms. Duty's findings.

The resolution of conflicts in the evidence is clearly a function of the Commissioner, not the courts. Thomas v. Celebrezee, 331 F.2d 541 (4th Cir. 1964). Before this Court can conduct a reasoned review of his decision, however, the Commissioner must "consider all relevant evidence" indicating "explicitly that such evidence has been weighed . . . its weight"[5] and articulate "the reasons underlying his actions . . . ." Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). The administrative law judge's failure to adequately explain the basis for his findings and the basis on which he resolved conflicts will require remand for a more careful evaluation of plaintiff's residual functional capacity during the relevant time and an explanation of the basis for findings with regard thereto.

---

[5] Arnold v. Secretary of Health, Education and Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

## **RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that this case be remanded to the Commissioner for further proceedings consistent with these Findings and Recommendation.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

ENTER: March 12, 2009

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE